Katherine McBroom, CBN 223559
KAEDIAN LLP
280 S. Beverly Drive, Suite 209
Beverly Hills, CA 90212
Telephone: (310) 893-3372
Fax: (310) 935-0323
kmcbroom@kaedianllp.com

Attorney for Defendant
JONATHAN REDONDO-ROSALES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN REDONDO-ROSALES<br><br>Defendant. | CASE NO. CR 25-679-JLS<br><br>JONATHAN REDONDO-ROSALES' OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #2 TO EXCLUDE POST ASSAULT EVIDENCE<br><br>Hearing Date: October 10, 2025<br>Hearing Time: 8:30 a.m.<br>Trial Date: October 21,<br>Location: Courtroom of the Hon. Josephine L. Stanton |

Defendant Jonathan Redondo-Rosales, through his counsel of record, Katherine C. McBroom, hereby files his opposition to the government's Motion *in Limine* # 2 to preclude self-defense. (Dkt. 33).

## I. INTRODCUTION

On August 2, 2025, Defendant Jonathan Redondo-Rosales ("Mr. Redondo-Rosales") attended a protest on Alameda Street in downtown Los Angeles. A number of Department of Homeland Security, Federal Protective Service Inspectors were guarding the entrance of the Edward R. Roybal Federal Building and the Metropolitan Detention Center. Mr. Redondo-Rosales came to the officers' attention when he stood in front of a vehicle which was attempting to turn onto Alameda Street from a driveway.

Instead of immediately stopping the car or backing up, the car rolled forward and Mr. Redondo-Rosales rolled onto the hood. When the car stopped, Mr. Redondo-Rosales slipped off the car, moved backwards, and was pursued by two officers. The government claims that, at that time, Mr. Redondo-Rosales intentionally struck officer Z.C. in the face. However, video evidence shows that officer Z.C. shoved Mr. Redondo-Rosales as he was moving backward, taking Mr. Redondo-Rosales off his feet and landing him onto his back on the concrete. Then, as Mr. Redondo-Rosales attempted to get to his feet, another officer tackled him from behind and took him to the ground a second time. As he was being pinned down by three officers, a fourth officer maced Mr. Redondo-Rosales in the face.  Mr. Redondo-Rosales was then escorted to a detention area. He sustained injuries to this face, left shoulder, left arm, and the palm of his right hand.

The Government seeks to preclude the defense from raising a self-defense theory on the bases that "the government has neither received <u>any</u> offer of proof nor expects a meritorious offer of proof of as to how defendant can establish a prima facie case for self-defense." (Dkt. 33, p. 4.) Video and testimonial evidence at trial will demonstrate that officers, including Z.C. violently pursued Mr. Redondo-Rosales because he impeded a car from moving. Officers were annoyed and clearly used excessive force in taking Mr. Redondo-Rosales down. He was

thrown violently to the ground twice. His head hit the pavement, and his shoulder and arms were dragged on the concrete. And he was maced while pinned on the ground.

The government does not acknowledge these facts, despite being well aware of them. Without describing the detention, tactics used, or injuries suffered, the government states in conclusory fashion that Z.C.'s "contact" with Mr. Redondo-Rosales was lawful because Mr. Redondo-Rosales "jumped on a federal vehicle." As set forth below and depicted in defenses exhibits, Mr. Redondo-Rosales did not jump onto a vehicle. Z.C. shoved him because he observed Mr. Redondo-Rosales stand in front of a vehicle and fall over onto the hood. From there, officers including Z.C. escalated the violence by slamming Mr. Redondo-Rosales (including his head) to the ground, pinning him down, and macing him.

The fact that Mr. Redondo-Rosales stood in front of a vehicle during a protest did not give officers the right to attack him and beat him. Mr. Redondo-Rosales did not intentionally strike Z.C. The defense, however, reserves the right to argue that any contact with Z.C. or any officer was a result of the officers' unlawful use of force and thus was an act in self-defense.

## II.   STATEMENT OF FACTS

On August 2, 2025, Mr. Redondo-Rosales was protesting on Alameda Street in front of the entrance to the Metropolitan Detention Center and the Edward R. Roybal Federal Building. At that time, several individuals were protesting the actions of the United States Immigration and Customs Enforcement (ICE) and Department of Homeland Security (DHS) in the Los Angeles area. Several DHS Federal Protective Services (FPS) Inspectors were positioned in front of the federal building, presumably to protect the federal buildings.

1  During the protest, Mr. Redondo-Rosales stood in front of a vehicle pulling
2  out of a driveway onto the street. See Exhibit 101



EX101

10  The car rolled forward despite Mr. Redondo-Rosales standing in front of it.
11  As the car slowly moved forward, Mr. Redondo-Rosales rolled onto the hood.
12  The Government claims Mr. Redondo-Rosales "jumped onto the hood" of the
13  car. (Dkt. 33, p. 3.)

          

EX102                    EX103                    EX104

21  When the car stopped, Mr. Redondo-Rosales stumbled off the hood and
22  moved backward. Two FPS inspectors ran toward him. As he moved backward,
23  complaining witness Z.C. shoved Mr. Redondo-Rosales. The Government
24  disputes that anyone shoved Mr. Redondo-Rosales.


**EX105**


**EX106**

Mr. Redondo-Rosales was shoved off his feet, into the air, and landed on his back onto the concrete. Thereafter, he was swarmed by three FPS Inspectors. As he attempted to get to his feet, one of the three inspectors grabbed Mr. Redondo-Rosales and flung him to the ground.


**EX107**


**EX108**

Mr. Redondo-Rosales sustained injuries to his face, shoulder, arm, and the palm of his hand.

As Mr. Redondo- Rosales was being held down and handcuffed by three FPS inspectors, a fourth FPS inspector sprayed Mr. Redondo-Rosales in the face with mace.



**EX109**  **EX110**

Mr. Redondo-Rosales was handcuffed, pulled to his feet, and escorted to a detention area.



**EX111**  **EX112**

Law enforcement did not, at any point, report or photograph the injuries Mr. Redondo-Rosales suffered as a result of their actions. (McBroom Decl.,¶9.)

Following the arrest, Z.C. provided a statement that Mr. Redondo-Rosales hit him in the face with a closed fist. (*Id.*, ¶8.) In its pretrial motions, the government has walked that back, stating that Mr. Redondo-Rosales "swatted" at officers. Z.C.'s lie regarding being punched in the face is indicative of the Z.C.'s and the other officers' motive to fabricate and avoid responsibility for the injuries they unnecessarily caused.

On August 5, 2025, Mr. Redondo-Rosales appeared for his arraignment on a felony complaint. Pursuant to a court order, defense counsel, in lock up, photographed Mr. Redondo-Rosales' injuries. (*Id.*, ¶4.) He sustained injuries to his head, left shoulder, left arm, and right palm.

   

   **EX113**    **EX114**    **EX115**    **EX116**

On August 15, 2025, the USAO filed a misdemeanor information against Mr. Redondo-Rosales alleging a violation of 18 U.S.C. § 111. (*Id.*, ¶10.) The USAO refuses to disclose whether it presented the case to a grand jury prior to filing the misdemeanor information. (*Id.*, ¶11.)

In its Motion *In Limine* No. 2, the USAO argues to preclude Mr. Redondo-Rosales from presenting a self-defense theory at trial.

### III. ARGUMENT

#### A. Elements of Self Defense

Model Ninth Circuit Jury Instruction No. 8.3 sets forth the elements of self-defense in connection with assault on a federal officer as follows: (1) the defendant did not know the victim was a federal officer or employee;(2) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force; and (3) the defendant used no more force than appeared reasonably necessary in the circumstances. Ninth Circuit Model Criminal Jury Instructions, No. 8.3 (2022 ed.)

However, the Ninth Circuit expressly allows for modification of this instruction depending on the facts of the case. The instruction commentary states:

> In *United States v. Span,* 970 F.2d 573 (9th Cir. 1992), the Ninth Circuit upheld this instruction. The court cautioned, however, that "the model instruction would be inappropriate in a case where the defendant's theory of the case is self-defense against the use of *excessive* force by a federal law enforcement officer." *Id.* at 577

(emphasis in original). In such a case, the instruction must be modified appropriately.

*Id.*, Commentary. *Span* explained that giving Model Instruction No. 8.3 where there is a claim of excessive force, as is the case here, would be inappropriate because the language "allows the government to defeat an excessive force theory of defense merely by proof beyond a reasonable doubt that the defendant knew that the person that [he] allegedly assaulted was a federal law enforcement officer." *Span,* 970 F.2d at 567. *Span* commented that the jury should not be prevented from acquitting someone where it believes excessive force was used simply because the government could establish the defendant knew the aggressor was a law enforcement officer. *Id.*

Pursuant to *Span,* the defense will request Model Jury Instruction No. 5.10 – Self-Defense, as modified to reflect the facts of this case:

> 5.10 Self-Defense
> The defendant has offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances. The government must prove beyond a reasonable doubt, with all of you agreeing, that the defendant did not act in reasonable self-defense.

This instruction is appropriately tailored to the facts of this case given defense's theory, and supported by video evidence that officers used excessive force when detaining and arresting Mr. Redondo-Rosales. *See U.S. v. Ornelas,* 906 F.3d 1138, 1147-48 (9th Cir. 2018) (citing *Span, supra,* 970 F.2d 573.)

### B. Mr. Redondo-Rosales Reasonably Believed the Use of Force Was Necessary to Defense Himself Against the Immediate Use of Unlawful Force

A defendant is entitled to a self-defense instruction where "there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility." *U.S. v. Sanchez-Lima,* 161 F.3d 545, 549

– 8 –

1 (9th Cir. 1998). Given the very low bar under *Sanchez-Lima,* the fact that the
2 government contests the evidence of self-defense does not preclude the court
3 giving a self-defense instruction. Whether Mr. Redondo-Rosales acted in self-
4 defense is a question of fact for the jury.
5       Mr. Redondo-Rosales did not intentionally strike Z.C. Rather, Z.C.
6 charged and forcefully shoved Mr. Redondo-Rosales lifting him up off his feet
7 and down onto the street. Thereafter, when Mr. Redondo-Rosales attempted to
8 get back on his feet, Z.C. along with other offices flipped Mr. Redondo-Rosales
9 back onto the ground wherein Mr. Redondo-Rosales hit is head on the pavement.
10 While being pinned by Z.C. and 2 others, a fourth officer maced Mr. Redondo-
11 Rosales in the face. There was no justification for the degree of force used by
12 Z.C. and the three officers who assisted him.
13       A juror observing Z.C.'s demeanor, and that of the other officers, could
14 reasonably conclude that Z.C. and others were acting with malicious intent to
15 harm Mr. Redondo-Rosales. A juror could further determine, based on the
16 officers' actions, that explanations as to why the conduct was not malicious or
17 intended to harm are pretextual and meant to justify or cover up their use of
18 excessive force.
19       Mr. Redondo-Rosales offers the following to establish a foundation for
20 self-defense:
21   - Officer accounts of Mr. Redondo-Rosales' conduct are inconsistent.
22   - The affidavit in support of the initial complaint states that Mr.
23     Redondo-Rosales jumped on a police car before he was detained. The
24     government also makes this claim in its pleadings.
25   - Video evidence shows that Mr. Redondo-Rosales did not "jump" on a
26     vehicle as stated by offices and the government in their pleadings.
27
28

- Video evidence shows Z.C. violently shoving Mr. Redondo-Rosales to the ground. The government claims this is not what the video shows. The jury can decipher the video.
- Video evidence shows a hat *possibly* grazing Z.C. as Mr. Redondo-Rosales is falling backward from being rushed and shoved by Z.C.
- Video evidence shows Mr. Redondo-Rosales flying backward from the push and landing onto his back on the concrete.
- Video evidence shows an officer, with the help of Z.C. and others, tackle Mr. Redondo-Rosales to the ground a second time. Mr. Redondo-Rosales' head hits the concrete.
- Video evidence shows an officer mace Mr. Redondo-Rosales in the face while three officers pin Mr. Redondo-Rosales to the ground.
- Any responsive action Mr. Redondo-Rosales might have taken at any time was a result of being placed in a state of fear and apprehension by Z.C.'s and others' excessive force, the number and size of the officers, and the fact that Mr. Redondo-Rosales was assaulted first.
- In his statement following the arrest, Z.C. claimed that Mr. Redondo-Rosales hit him in the face with a closed fist. Video evidence establishes that Z.C.'s statement is false.
- Photographic and video evidence establishes that Mr. Redondo Rosales sustained injuries to his face, left shoulder, left arm, and right palm as a result of the officers', including Z.C.'s, use of excessive force.
- Mr. Redondo-Rosales' injuries are consistent with intentional assault and beating, not simply efforts to move, restrain, or arrest him.
- The officers, including Z.C., failed to report the tactics used to detain Mr. Redondo-Rosales.
- The officers, including Z.C., failed to report or document injuries they caused to Mr. Redondo Rosales.

- Witnesses will testify that Mr. Redondo-Rosales did not strike Z.C. or any other officer, but rather that Z.C. shoved Mr. Redondo-Rosales and that other officers, with Z.C.'s assistance, used unreasonable force to throw him the ground, pin him down, and mace him.
- For the foregoing reasons, a jury could reasonably conclude that any actions by Mr. Redondo-Rosales to defend himself from FPS's officers' violence and aggression were reasonable responses to unlawful use of force.

### C. Mr. Redondo-Rosales Used No More Force Than Reasonably Necessary Under the Circumstances

Mr. Redondo-Rosales offers the following to establish a foundation that he used no more force than necessary under the circumstances:

- Mr. Redondo-Rosales did not intentionally strike Z.C.
- Any force Mr. Redondo-Rosales used to defend himself against Z.C. was reasonable since Z.C. was the aggressor and had the advantage of several supporting officers and equipment.
- Mr. Redondo-Rosales was outnumbered by assaultive FPS officers such that any force he used to defend himself against their attacks was reasonably necessary.
- Because Z.C.'s and other the officers' use of force was excessive and unjustified, any physical action Mr. Redondo-Rosales might have taken was reasonably necessary to shield himself from further injury.
- Video and photographic evidence of Mr. Redondo-Rosales' injuries, and a lack of any injuries to the officers, demonstrates Mr. Redondo-Rosales' inability to stop the excessive, unlawful use of force against him, and thus, any force, he used to protect himself was reasonable, even if ineffective.

## IV. CONCLUSION

Mr. Redondo-Rosales has satisfied the minimal showing necessary to present the affirmative defense of self-defense. As set forth herein, where there is excessive force by law enforcement, the jury should not be precluded from acquitting Mr. Redondo-Rosales based solely on the government establishing that Mr. Redondo-Rosales knew the aggressor was a law enforcement officer. Here, the officers' acted unlawfully and attempted to cover their tracks with misrepresentations and omissions. Accordingly, the Court should deny the government's Motion *In Limine* No. 2. Further, should the defense choose to present an affirmative defense, the Court should adopt the proposed self-defense jury instruction herein.

DATED: September 23, 2025

                                                  /s/
                                      Katherine McBroom
                                      Attorney for JONATHAN REDONDO-ROSALES

**DECLARATION OF KATHERINE McBROOM**

1. I am an attorney licensed to practice law in California State and Federal courts, am a member of the CJA Panel for the Central District of California and I have been appointed to represent Jonathan Redondo-Rosales.

2. On August 2, 2025, Mr. Redondo-Rosales was arrested in Los Angeles.

3. On August 5, 2025 I was appointed to represent Mr. Redondo-Rosales. That day, Mr. Redondo-Rosales appeared for his arraignment on a felony complaint.

4. On August 5, 2025, during this initial appearance, I met with Mr. Redondo-Rosales in lock up and, pursuant to a Court order, photographed the injuries he sustained to his head, left shoulder, left arm, and right palm. Exhibits 113-116 are photographs taken by me.

5. Exhibits 101, 105, 109-112 are stills created from video provided by the defense to the government. The defense has disclosed to the name and contact information for the individuals who took these videos.

6. Exhibits 102-104 and 106-108 are stills created from a video produced by the government. The government has not disclosed the name and contact information for the individual who took the video.

7. I have reviewed all discovery produced by the government thus far in this matter.

8. In his statement concerning the incident, complaining witness Z.C. claims that Mr. Redondo-Rosales hit him with a closed fist.

9. None of the reports related to this matter, including Z.C.'s statement, including a description of the tactics used to detain and arrest Mr. Redondo-Rosales, nor do they document or described the injuries suffered by Mr. Redondo-Rosales.

10. On August 15, 2025, the USAO filed a misdemeanor information against Mr. Redondo-Rosales alleging a violation of 18 U.S.C. § 111.

11. The USAO refuses to disclose whether it presented the case to a grand jury prior to filing the misdemeanor information.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 25th day of September 2025, at Beverly Hills, California.

_____/s/_____
KATHERINE McBROOM