Katherine McBroom, CBN 223559
KAEDIAN LLP
280 S. Beverly Drive, Suite 209
Beverly Hills, CA 90212
Telephone: (310) 893-3372
Fax: (310) 935-0323
kmcbroom@kaedianllp.com

Attorney for Defendant
JONATHAN REDONDO-ROSALES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. CR 25-679-JLS |
|---|---|
| Plaintiff, | DEFENDANT JONATHAN REDONDO-ROSALES' MOTION *IN LIMINE* NO. 1 TO EXCLUDE VIDEO EVIDENCE |
| v. | |
| JONATHAN REDONDO-ROSALES | Hearing Date: October 10, 2025 |
| Defendant. | Hearing Time: 8:30 a.m. |
| | Trial Date: October 21, |
| | Location: Courtroom of the Hon. Josephine L. Stanton |

Defendant, Jonathan Redondo-Rosales, by and through his counsel of record, Katherine C. McBroom, hereby files his Motion *in Limine* No. 1 to Exclude video evidence. Mr. Redondo-Rosales requests that the Court exclude from evidence at trial any and all video evidence which the government cannot properly authenticate and/or for which the government cannot establish foundation.

– 1 –

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **INTROCUTION**

On August 2, 2025, Defendant Jonathan Redondo-Rosales ("Mr. Redondo-Rosales") was arrested by Department of Homeland Security ("DHS"), Federal Protective Services Inspectors ("FPSs") while attending a protest in downtown Los Angeles.  Mr. Redondo-Rosales and others were protesting the actions of Immigration and Customs Enforcement ("ICE) as well as DHS in front of the Edward R. Roybal Federal Building and the Metropolitan Detention Center on North Alameda Street.

Mr. Redondo-Rosales caught officers' attention when he stood in front of and blocked a government vehicle attempting to turn onto Alameda Street. As the car inched forward, Mr. Redondo-Rosales rolled on top of the hood. When the car stopped, he stumbled off the hood and was approach by two officers. As he backed away from the officers, complaining witness, Inspector Z.C., forcefully shoved Mr. Redondo-Rosales causing him to fall backward violently onto the ground. As he attempted to get to his feet, another officer grabbed Mr. Redondo-Rosales from behind and thew him to the ground, for the second time. Finally, as Mr. Redondo-Rosales was pinned to the ground by three officers, a fourth sprayed mace in Mr. Redondo-Rosales' face. Mr. Redondo-Rosales sustained injuries to his head, left shoulder, left arm, and right palm.

The government disputes that Z.C. shoved Mr. Rosales-Rosales at any time. They allege that Mr. Redondo-Rosales hit Z.C. while backing away from the government vehicle and that he simply stumbled and fell backward on his own accord.  Further, they likely will claim that any injury Mr. Redondo-Rosales sustained as result of this detention and arrest were due to his obstruction and resisting arrest. This reasoning is typical where officers use excessive force and seek to avoid the repercussions of their actions.

The government produced video evidence to the defense, consisting of what appears to be clips downloaded or otherwise saved from social media platforms. The government has not provided information as to who created the videos, who posted the videos, or who extracted the videos from the internet and when. Evidently, the government intends to present video evidence at trial but does not intend to properly authenticate or lay the appropriate foundation for the video(s). Pursuant to Federal Rule of Evidence 901, this evidence must be excluded from trial.

II.   **STATEMENT OF FACTS**

On August 2, 2025, Mr. Redondo-Rosales was arrested while protesting on Alameda Street in front of the entrance to the Metropolitan Detention Center and the Edward R. Roybal Federal Building. There are videos available online, including on various social media platforms, purportedly depicting Mr. Redondo-Rosales' encounter with DHS, FPS officers.

The defense has produced two videos to the government along with the names and contact information for the individuals who took the videos at the scene. Presumably, if the defense seeks to enter these videos into evidence, it will call the witnesses who recorded them and inquire as to the circumstances of the recording in order to authenticate and lay the appropriate foundation for the videos.

The government, on the other hand, has provided videos which appear to have been downloaded or otherwise saved from the internet. The government has not disclosed the individuals who created the videos or the circumstances of the recordings[1]. Further, the government has not disclosed who procured the videos,

---

[1] The defense referenced still images from one of the videos produced by the government in Mr. Redondo-Rosales' Oppositions to the government's Motions *in Limine* 2 and 3. The defense by no means stipulates to the authenticity of the video. Should the government be

– 3 –

how they procured them and when.

The defense anticipates the government will seek to admit video evidence at trial without properly authenticating it. The fact that the government opposes a motion that unauthenticated evidence be excluded from seems to support this notion.

### III. ARGUMENT

#### A. Legal Standard

Under Federal Rule of Evidence 901(a), the proponent of evidence must produce sufficient evidence to support a finding that the item is what the proponent claims it to be. Examples of proper authentication include testimony from a witness with knowledge of the item.  Fed. R. Evid. 901(b).

Pursuant to Federal Rule of Evidence 602, a witness must testify to matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

#### B. The Government Cannot Authenticate Video Evidence Proffered

The government has not disclosed and presumably does not know who created one or more of the videos it seeks to admit at trial.  It appears the government may rely on the testimony of Z.C. or other officers at the scene in order to authenticate and/or the lay the foundation for admission of the video evidence. Such testimony is not sufficient to authenticate and admit the videos.

First, the government is unable to demonstrate how the video was created and whether its creator edited the recording. One of the recordings is in slow motion. It is unknown whether the original recording was filmed in slow motion, or the recording was edited afterward. Under Federal Rule of Evidence 901,

---

unable to authenticate or lay the appropriate foundation for the video, the video evidence, including any stills derived therefrom, should be excluded at trial.

– 4 –

authentication of evidence requires sufficient proof that the item is what it is claimed to be. *See Griffin v. Bell*, 694 F3d 817, 827 (7th Cir. 2012) (The court emphasized that testimony from a witness with knowledge of how video was made or whether it was altered is necessary to authenticate a video under Rule 901(b)(1).) The government has not disclosed a witness who can testify as to the authenticity of the video they intend to admit. Additionally, they cannot establish foundation for admission by other means – such as comparison with other authenticated evidence. *See Diaz v. Cty. of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021).  No such corroborating evidence exists.

Videos on the internet can be easily manipulated, edited, or faked. The government cannot demonstrate that the video they intend to admit has not been manipulated. Currently the prevalence of video editing software makes it dangerously simple to manipulate videos. Not having a monitoring system to track each change on a file means multiple ways to twist and complicate the truth around a crime scene. The proffered evidence is unreliable.

Second, an officer does not have sufficient personal knowledge concerning the recording to authenticate it. The fact that an officer was present at this scene does not establish that the video accurately portrays what transpired.

Third, the video evidence proffered is more prejudicial than probation under Federal Rule of Evidence 403. The slow motion video in particular misrepresents what occurred in real time. The events at issue occurred in seconds. A slow motion or altered video does not accurately capture the events as they unfolded. A touching might appear intentional in a slow motion video, but unintentional when viewed in real time. Because the video, particularly the slow motion video, will mislead and the confuse the jury, it must be excluded from evidence.

## IV. **CONCLUSION**

For the foregoing reasons, Mr. Redondo-Rosales requests that the Court exclude video evidence at trial which the government cannot appropriately authenticate.

DATED: September 30, 2025

/s/
_____
Katherine McBroom
Attorney for JONATHAN
REDONDO-ROSALES