JS-3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JONATHON REDONDO-ROSALES.<br><br>　　　　　　Defendant. | Case No. 2:25-cr-00679-CV<br><br>**ORDER DISMISSING INFORMATION WITH PREJUDICE**<br><br>[DOC. # 91] |

　　　Defendant Jonathon Redondo-Rosales ("Defendant") was detained for six months pending trial on a charge arising from an incident in which he allegedly struck—with a cloth hat—a federal officer wearing riot gear. The record reflects a fast-moving encounter where the alleged victim, United States Federal Protective Service ("FPS") Inspector Z.C., lunged toward Defendant, the alleged hat strike occurred, and Defendant was then forcibly restrained and arrested by multiple armed FPS officers wearing riot gear. Defendant has documented visible injuries he alleges were sustained during the encounter. He intended to argue at trial that his conduct constituted self-defense against the imminent use of unlawful force, following officers' disproportionate response to Defendant dancing in front of a government vehicle during a small protest of the Government's recent immigration enforcement activities. This trial would have been Defendant's first opportunity to present his defense to a jury. His criminal trial will not occur, however.

This is because eleven days before trial, the Government moved to dismiss the charge. Doc. # 92. Generally speaking, dismissals come in two flavors: a dismissal without prejudice permits the Government to refile the charge at a later time; a dismissal with prejudice permanently bars re-prosecution. Here, the Government seeks dismissal without prejudice, which would leave the charge unresolved while affording the Government a significant tactical benefit: time to regroup and prepare for re-prosecution with the benefit of Defendant's trial strategy.

The Court does not accept the Government's explanation for seeking dismissal without prejudice, which is addressed in detail below. In substance, the Government now contends that dismissal is necessary so Defendant can face state proceedings—the same state proceedings that the Government previously cited as a reason that Defendant should be detained pending trial in this case. Allowing dismissal on these terms would, at least from Defendant's perspective, reward gamesmanship and invert Rule 48(a)'s purpose, transforming a protection against prosecutorial abuse into a mechanism for it.

The Court has already granted the Government's motion to dismiss the charge. Doc. # 93. It reserved, however, the question of whether dismissal should be with or without prejudice. *Id*. After a hearing on February 9, 2026, the answer is clear. Dismissal with prejudice is required to prevent action that would amount to prosecutorial harassment and to account for the very real cost already imposed on Defendant.

I.   **BACKGROUND**

   A.   **Charges and Underlying Conduct**

On August 4, 2025, in Case No. 2:25-mj-04835, Defendant and his codefendant, Ms. Ashleigh Brown, were charged with felony violations of 18 U.S.C. § 111(a)(1). Doc. # 1. Both were arraigned on August 5, 2025. Doc. # 16. On August 15, 2025, the government filed an Information against Defendant alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1). Doc. # 25. The charged offense carries a maximum penalty of one year of imprisonment, a fine, or both. *See* 18 U.S.C. § 111(a).

The charge arose out of an altercation between Defendant and federal law enforcement officers near a garage exit of the Roybal Federal Building on Alameda Street in downtown Los Angeles where some protestors had gathered. Based on the Government's submitted video evidence,[1] the incident appears to have unfolded as follows:

As a black government car was exiting the Roybal Federal Building, Defendant crossed Alameda Street and positioned himself in front of the vehicle, preventing it from turning onto the street. Video Exhibit 1 at 0:00:31–0:00:43; Video Exhibit 2 at 0:00:18–0:00:24. At the time, Defendant was wearing a khaki-colored, broad-brimmed, sun-protector-style cloth hat. *Id*.

The vehicle came to a stop, and Defendant appeared to dance in front of it while continuing to block its exit. Video Exhibit 1 at 0:00:43–0:00:44; Video Exhibit 2 at 0:00:24–0:00:35. The vehicle then appeared to move forward slowly and made contact with Defendant. Video Exhibit 1 at 0:00:44–0:00:47; Video Exhibit 2 at 0:00:34–0:00:36. After the contact, Defendant rolled onto the hood of the vehicle and his feet lifted off the ground. Video Exhibit 1 at 0:00:47–0:00:50; Video Exhibit 2 at 0:00:36–0:00:42; *see also,* Doc. # 1 at 3; Doc. # 40 at 4.

Defendant then rolled back off the vehicle, planted his feet on the ground in front of the vehicle, moved away from the car, and turned to face five armed, uniformed FPS officers wearing body armor and helmets with face shields, who were moving toward him. Video Exhibit 1 at 0:00:50–0:00:52; Video Exhibit 2 at 0:00:42–0:00:44. One officer attempted to grab Defendant, but Defendant backpedaled out of reach. Video Exhibit 1 at 0:00:51–0:00:52; Video Exhibit 2 at 0:00:44–0:00:47. As Defendant continued moving

---

[1] On January 29, 2026, the Government lodged with the Court two video exhibits that it intended to play at trial. *See* Doc. # 85, Video Exhibit 1 is taken by a surveillance camera that appears to depict events in real time and is five minutes long. Doc. # 81 at 3, ¶ 3. Video Exhibit 2 is a bystander video taken in slow motion that is approximately one minute and twenty-five seconds long. *Id*. at 3, ¶ 4. The Court provides the timestamps for each video corresponding to its recitation of the incident in question here.

backward, his hat fell forward, covering his face. Video Exhibit 1 at 0:00:51–0:00:53; Video Exhibit 2 at 0:00:46–0:00:48. Still moving backwards, Defendant removed the hat from his face while a second officer—the alleged victim—quickly approached him with arms outstretched. Video Exhibit 1 at 0:00:51–0:00:53; Video Exhibit 2 at 0:00:46–0:00:48.

As Defendant moved backward, he swung his left hand (holding the hat) toward the alleged victim, causing the hat to make contact with the alleged victim. Video Exhibit 1 at 0:00:52–0:00:53; Video Exhibit 2 at 0:00:48–0:00:49. This contact is the alleged assault in this case.[2]

After the alleged assault, Defendant fell backwards onto the ground as the arresting officers closed in. Video Exhibit 1 at 0:00:53–0:00:55; Video Exhibit 2 at 0:00:48–0:00:54. Defendant attempted to stand as the first officer and the alleged victim officer attempted to restrain him. Video Exhibit 1 at 0:00:55–0:00:57; Video Exhibit 2 at 0:00:54–0:00:57. Defendant was taken to the ground again while flailing, and several officers restrained him on the ground as other officers stood nearby. Video Exhibit 1 at 0:00:55–0:01:03; Video Exhibit 2 at 0:00:57–0:01:25. Additional officers and bystanders approached the area where Defendant was being restrained. Video Exhibit 1 at 0:01:03–0:02:00. Defendant asserts that the arresting officers sprayed him with a chemical irritant while he was pinned to the ground, and that he sustained cuts and bruises during the arrest. Doc. # 40 at 2–3, 13, ¶ 4. Defendant's hands were restrained behind his back and one officer led him away from the street toward the federal building. Video Exhibit 1 at 0:02:00–0:02:16. From the time that Defendant crossed Alameda Street to the time he is escorted from the scene is approximately one minute and forty-five seconds. *See* Video Exhibit 1 at 0:00:31–0:02:16.

---

[2] *See* Doc. # 1 at 4, ¶ 4(c) ("[Defendant] intentionally struck [alleged victim] Officer Z.C. in the face with his left hand (at the time, [Defendant] had a tan, wide-brimmed hat in his left hand)"); Doc. # 33 at 4 ("[D]efendant retreated from victim Z.C. and swatted with his left hand towards Z.C.'s face. Defendant was holding a straw hat in his left hand at time of the strike.").

Defendant asserts that the arresting officers later failed to document his injuries and made false statements about the alleged assault, including that Defendant struck the alleged victim with a closed fist. *See* Doc. # 40 at 13, ¶¶ 7–8.[3]

### B.   Defendant's Pre-Trial Detention

At his arraignment, Defendant was ordered detained on the Government's motion. Doc. # 20. Defense counsel represents that, at the August 5, 2025 arraignment hearing, the Government sought detention based on Defendant's criminal history and parole status, and that the parties discussed Defendant's parole status, including the likelihood that Defendant would appear in San Diego County to address an alleged parole violation. Doc. # 92 at 13, ¶¶ 3–16. In an order issued the same day, the magistrate judge found that Defendant should be detained pending trial, noting Defendant's "history of parole violations" and that he was "currently on parole." Doc. # 20 at 3.

On August 28, 2025, Defendant asked the Magistrate Judge to reconsider her detention order. Doc. # 29. The Government opposed the request, and the Magistrate Judge held a hearing on September 3, 2025. *See* Doc. ## 29, 30. Defense counsel asserts that, at this hearing, Defendant advised the Court of his desire to be released in order to address the alleged parole violation in San Diego County. Doc. # 92 at 13, ¶ 17. She further asserts that the Government opposed Defendant's release and did not argue that Defendant should be remanded to San Diego County custody to address the parole matter before proceeding in this case. *Id*. at 13, ¶ 19. The Magistrate Judge denied Defendant's request for reconsideration. Doc. ## 29, 30.

Defendant therefore remained detained pending trial for approximately six months.[4]

---

[3] As of the date of this order, the Court has not been presented with these alleged false statements. Defense counsel has described these false statements to the Court in a sworn declaration.

[4] It is not clear why Defendant did not appeal the Magistrate Judge's custody determination to the assigned District Judge.

### C. Proceedings in Defendant's Co-Defendant's Case

On August 26, 2025, the Government filed a separate Information against Ms. Brown alleging a misdemeanor violation of 18 U.S.C. § 111(a)(1) in *United States v. Ashleigh Brown*, Case No. 2:25-cr-00701-FMO.

This case never went to trial. On October 27, 2025, the Government moved to dismiss the charges brought against Defendant's co-defendant, Ms. Ashleigh Brown, with prejudice, and the request was granted the next day. The Government sought this dismissal shortly after disclosing that the alleged victim in the *Brown* case—the same alleged victim as in this case—FPS Inspector Z.C., had not previously disclosed a 2021 harassment conviction during trial-preparation discussions with prosecutors, when asked, despite disclosing older criminal history. *See* Doc. # 53-3 ¶¶ 4, 6–7. After Ms. Brown's counsel raised the issue, the Government conducted additional inquiries, during which Inspector Z.C. acknowledged that the 2021 conviction appeared to pertain to him. *Id.* ¶¶ 6–7. The Government further reported that FPS first learned of the 2021 conviction from defense counsel and that FPS was continuing to investigate the matter. *Id.* ¶¶ 7–11.

### D. Pre-Trial Filings and Final Pre-Trial Conference

The Court originally set this matter for jury trial on October 7, 2025. Doc. # 27. At the parties' request, the Court (then presided over by Judge Staton) continued the trial to February 3, 2026. Doc. ## 37, 50, 52.[5]

On September 16, 2025, the Government filed three motions in limine. It sought to introduce Defendant's prior convictions and their underlying facts to rebut any character evidence and for impeachment if Defendant testified (Doc. # 32); to preclude Defendant from arguing self-defense (Doc. # 33); and to exclude evidence concerning Defendant's arrest and restraint immediately following the alleged assault (Doc. # 34). Defendant opposed each motion on September 26, 2025. Doc. ## 39, 40, 41.

---

[5] The Government did not object to the requested continuances and did not note any concern about the delay affecting any state court proceeding. *See* Doc. ## 36, 49, 51.

On September 30, 2025, Defendant filed two motions in limine: one to exclude a video of the alleged assault on authentication and foundation grounds (Doc. # 42), and another to compel disclosure of any grand jury proceedings and witness testimony (Doc. # 43). The Government opposed both motions. Doc. ## 45, 46.

On January 9, 2026, Defendant moved to compel additional discovery, including materials relating to alleged false statements by the alleged victim, Inspector Z.C., in the Brown case, as well as personal records and use-of-force reports for Z.C. and other arresting officers. Doc. # 53. The Government opposed the motion and stated that it did not intend to call Z.C. as a witness, and that Defendant should not be permitted to call him either. Doc. # 58 at 8–10.

The case was reassigned to the undersigned Judge on January 22, 2026. Doc. # 61. The final pretrial conference was continued from January 23 to January 28, 2026. Doc. # 62.

At the January 28, 2026 pretrial conference, the Court heard extensive argument on the six pending pretrial motions, proposed jury instructions, and related filings. To assist the parties in preparing for the imminent February 3, 2026 trial, the Court addressed several unresolved issues while it worked to resolve the remaining disputes. Among other matters, the Court explained that the parties' proposed self-defense instruction did not align with Defendant's theory and indicated that Ninth Circuit Model Criminal Instruction No. 5.10 would be given if self-defense were permitted.[6] The Court also noted that, if the Government were allowed to present Video Exhibit 2 over Defendant's objection, the rule

---

[6] This change was significant. The proffered jury instruction, modeled on Ninth Circuit Model Criminal Instruction 8.3, would have required Defendant to prove that he was unaware that the alleged victim, Officer F.C., was a federal officer at the time of the alleged assault. *See* Doc. # 68 at 50. The Ninth Circuit has made clear, however, that such an instruction is inappropriate where the defendant's self-defense theory rests on alleged excessive force by law enforcement. *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992). At the January 28, 2026 final pretrial conference, counsel for both parties agreed that Model Criminal Instruction 5.10 was the appropriate instruction for this case when the Court pointed this out. Defense counsel further explained that the inclusion of Instruction 8.3 in the joint proposed jury instructions was an oversight.

of completeness would likely require the entire video to be played, including footage depicting Defendant's restraint and arrest immediately after the alleged assault. The Court further directed the Government to prepare materials responsive to Defendant's motion to compel to avoid delaying trial if the motion were granted.

Following the pretrial conference, the Court ordered additional briefing and submissions. Doc. ## 77, 80, 83, 84. The parties complied. Doc. ## 78, 79, 81, 82, 85, 89, 90. On January 29, 2026, the Court ordered the Government to lodge its video exhibits and provide the TMAX date – the last day that Defendant could be tried pursuant to the Speedy Trial Act. The Government responded that the applicable TMAX date was February 20, 2026, and lodged its video exhibits. Doc. # 86. Although the Court did not request counsel's availability, the Government also advised that both assigned prosecutors had preplanned leave beginning February 10 and 11, 2026. *Id*. at 3, ¶ 9. The Government's notice did not mention any state court proceedings, Defendant's parole status, or any other concern that continuing Defendant's trial date would conflict with any state court interests.

On January 30, 2026, the Court continued trial from February 3 to February 17, 2026, to allow further consideration of the pending motions and recent submissions. Doc. # 88. Given that Defendant was in custody, the Court did not adjust the trial date to accommodate the Government's proffered leave schedules, nor did it request defense counsel's availability.

### E. The Government's Contested Rule 48(a) Motion to Dismiss Without Prejudice

On February 6, 2026—eleven days before trial—the Government filed the instant motion to dismiss the Information without prejudice under Federal Rule of Criminal Procedure 48(a). Doc. # 91. In its five-page motion, the Government asserted that "it is in the interests of justice to dismiss the information in this case so that the defendant can be remanded to the state of California for further proceedings on his alleged parole violation from his 2023 felony conviction," and that "[a]s such, there is no need for the extreme remedy of dismissal with prejudice." *Id*. at 5. The Government represented that Defendant

agreed the Information should be dismissed but objected to dismissal without prejudice. *Id*. at 3–4. The Government requested a hearing on February 9, 2026. *Id*.

Based on the Government's representation that the parties agreed dismissal was appropriate but disputed whether the Government should be permitted to refile the charge, and mindful that Defendant had been detained for six months and counting, the Court issued a short order that same day. The Court granted the motion to the extent it sought dismissal of the Information, reserved the question whether dismissal should be with or without prejudice, set a hearing on that issue for February 9, 2026, and ordered Defendant's immediate release. Doc. # 93.

Also on February 6, 2026, Defendant filed an opposition to the Government's motion. Doc. # 92.[7] In that filing, Defendant asserted that the Government's motion misstated the record and that its stated reason for dismissal was pretextual. *Id*. at 2. Defendant contended that the Government had been aware of the alleged parole violation since his initial detention on August 5, 2025, had relied on that violation to argue for continued detention, and had opposed Defendant's request to be released to address the parole matter. *Id*.

Defense counsel Katherine McBroom submitted a declaration providing additional context for the parties' communications preceding the motion. Doc. # 92-1. She attached a February 4, 2026 email to Government counsel expressing concern that the Government sought dismissal without prejudice to permit trial counsel to take leave and later refile the case. *Id*. She also attached a February 5, 2026 response from the Government's counsel, who stated:

> "**The government is concerned that defendant is using his federal misdemeanor case to shield himself from the pending parole violation proceedings** related to his 2023 state felony conviction for stalking in

---

[7] Although the opposition was filed before the Court's order was docketed, the Court had not received or reviewed it before issuing the order.

-9-

      violation of California Penal Code 646.9(b). The government believes that it is in the interests of justice for the state matter to proceed first, which is why we are seeking a dismissal without prejudice."

Doc. # 92-2 (emphasis added).

## II.   LEGAL STANDARD

"At common law a prosecutor had unrestricted authority to enter a nolle prosequi without the consent of the court." *United States v. Gonzalez*, 58 F.3d 459, 460 (9th Cir. 1995). Federal Rule of Criminal Procedure 48(a) "represents a departure from the common law," providing instead that "the Government may file a dismissal of an indictment, information, or complaint 'by leave of court.'" *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000). The rule's primary purpose is "to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see also Gonzalez*, 58 F.3d at 461 ("The primary purpose of the requirement that leave of court be obtained is to grant judges discretion to prevent the government from using its discretionary power to dismiss indictments for purposes of harassment.").[8]

At the same time, "a district court is limited in its ability to second-guess the government's decisions on whether and what to prosecute." *García-Valenzuela*, 232 F.3d at 1007. "The decision to dismiss an indictment implicates concerns that the Executive is uniquely suited to evaluate, and a district court should be reluctant to deny its request." *Gonzalez*, 58 F.3d at 462. That deference has limits. When, as here, "the defendant contests a Rule 48(a) motion, the motion raises concerns that are not present when the court considers an uncontested motion to dismiss: the district judge . . . must be careful to

---

[8] *But see*, Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online (2020), https://review.law.stanford.edu/wp-content/uploads/sites/3/2020/06/73-Stan.-L.-Rev.-Online-Frampton.pdf (last visited Feb. 9, 2026) (analyzing the legislative history of Rule 48, concluding that the primary purpose was to protect against dismissals motivated by corrupt purposes).

safeguard [the defendant's] rights." *Id*. In such circumstances, if dismissal without prejudice would permit harassment or undermine the public interest, the Court "might rightly condition dismissal on its being with prejudice." *In re U.S.*, 345 F.3d 450, 452–53 (7th Cir. 2003); *see, e.g., United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989) (dismissing charges with prejudice where dismissal without prejudice would "allow the prosecutor to dismiss charges but nevertheless to keep them in abeyance for an indefinite period of time" in the hope of gaining a tactical advantage with the passage of time); *United States v. Erickson*, No. 3:19-CR-0053-003, 2024 WL 81290, at *9 (D.V.I. Jan. 8, 2024) (dismissing indictment with prejudice because the Government's stated reason was pretextual and the true reason was to obtain a tactical advantage).

## III. DISCUSSION

### A. The Government's Stated Rationale Is Pretextual

"A fundamental consideration in assessing the propriety of a prosecutor's dismissal motion is whether the motion is made in 'good faith.'" *Wallace*, 848 F.2d at 1468. The Ninth Circuit has explained that when the Government's stated reason for seeking dismissal without prejudice is a "sham," and the true purpose is to gain a tactical advantage by choosing a more favorable time to re-charge a defendant, the motion is considered to have been brought in bad faith. *Id*. In such circumstances, granting dismissal without prejudice would constitute an abuse of discretion. *Cf. id*. (upholding dismissal without prejudice where the Government's stated reason—investigating potential tax charges—was not a sham, the defendant consented to dismissal, and no clear tactical advantage was obtained).

The Court finds that the Government's stated reason for seeking dismissal without prejudice is pretextual and advanced in bad faith. In its Motion, the Government's asserted reason for the dismissal was because "the Superior Court of California, County of San Diego, has a pending arrest warrant for defendant for an alleged parole violation." Doc. # 91 at 3–4.

The Motion did not identify the nature of the alleged violation,[9] when it occurred, or when the Government became aware of it. Nor did it explain why, if the Government had known of the state proceedings for months, state authorities could not have sought Defendant's temporary presence through a writ of habeas corpus under 28 U.S.C. § 2241. And if, as the Motion suggests, the Government learned of the matter only recently, it failed to explain why the state proceedings could not wait until after the scheduled February 17, 2026 trial. Either way, dismissal to ensure Defendant faces the state proceedings makes little sense. Within days, Defendant would have been either convicted—at which point the Government could have remanded him to state authorities—or acquitted, in which case state authorities could have arrested Defendant immediately upon release.

The Motion also failed to explain why dismissal without prejudice was necessary. It did not disclose whether the Government intends to re-charge Defendant, or when. Instead, it simply concluded that because of the pending state matter, "[a]s such, there is no need for the extreme remedy of dismissal with prejudice." Doc. # 91 at 5.

As counsel for the Government conceded at the February 9, 2026 hearing, the Government has been aware of the alleged parole violation since August 5, 2025. Indeed, the Government relied on that alleged violation to argue that Defendant should remain detained pending trial. At the September 3, 2025 hearing, the Government opposed Defendant's request for release so he could address the parole matter and cited the alleged violation as a basis for continued detention. *See* Doc. # 30 at 1. It is therefore troubling that the same counsel representing the Government at that hearing would now accuse Defendant of "using his federal misdemeanor case to shield himself from the pending

---

[9] In her declaration opposing the Motion, defense counsel explains that the alleged parole violation stemmed from a procedural error following the transfer of Defendant's parole supervision from Los Angeles County to Chula Vista in San Diego County—a location far from Defendant's residence for reasons unknown to him. According to defense counsel, Defendant's failure to appear in person at the Chula Vista parole office led to an allegation that he had absconded, notwithstanding his efforts to contact his parole agent to explain his inability to travel to that location. *See* Doc. # 92 at 12–13, ¶¶ 4–15.

parole violation proceedings." Doc. # 92-2. A defendant held in federal custody is not "shielded" from state process. Federal detention may delay state proceedings, but it does not prevent them. As any criminal practitioner knows, federal detention is not a good hiding place from state charges. And as counsel for the Government knows in this case, Defendant did not seek to be detained. In fact, Defendant sought release on bond in order to address the alleged parole violation, but the Government opposed. *See* Doc. # 92 at 13, ¶ 17.

At the February 9, 2026 hearing, Government counsel attempted to justify its changed position by asserting that the Government was concerned about the delay of Defendant's trial and that California's interest in prosecuting Defendant had eclipsed the federal interest with the most recent continuance. In other words, it was the Court's recent two-week continuance that led the Government to conclude that the state matter had become more important than proceeding with the federal prosecution.

This reason was not identified in the Government's Motion, and it is plainly meritless. At the February 9, 2026 hearing, Government counsel could not identify any recent communications with state authorities that would suggest urgency. Indeed, counsel stated he was not aware of any state statute-of-limitation or speedy trial concerns triggered by the Court's recent trial continuance. In short, the Government has not explained why the passage of an additional two weeks rendered the state's interest suddenly so urgent that dismissal was sought. Nor did counsel explain why dismissal of the federal case was necessary to accommodate any state proceedings. To the contrary, counsel conceded at the hearing that had Defendant been convicted at the February 17, 2026 trial, established procedural mechanisms would have permitted the state to secure Defendant's presence before completion of any federal sentence, so any delay of the state proceedings would have been minimal.

For these reasons, the Court finds that the Government's reliance on the alleged parole violation as justification for dismissal without prejudice is pretextual and thus offered in bad faith.

### B. Postponing Trial to Gain a Tactical Advantage Constitutes a Bad Faith Reason for Dismissal Without Prejudice

Why, then, seek dismissal on the eve of trial? Defendant offers two explanations. The Court credits only one.

The Court does not accept the suggestion that the Government sought dismissal without prejudice to accommodate preplanned leave by trial counsel. To be clear, if that were the reason, it would be indefensible. To abandon a pending criminal case for a vacation without arranging substitute counsel—after securing a defendant's detention and litigating the matter aggressively for months—would reflect a fundamental disregard for the obligations of the prosecutorial office.

But the Court does not believe that is what occurred here. Counsel's disclosure of scheduling constraints, while not requested by the Court, may reasonably be understood as assisting the Court in managing its calendar. The record further undermines the vacation-based explanation. The United States Attorney's Office for the Central District of California has numerous capable trial attorneys who could have easily handled a one-count misdemeanor trial set for February 17, 2026. The Government represented that it intended to call only one witness and introduce three exhibits, and the legal issues were neither novel nor complex. Given the vigor with which the Government litigated this case and opposed Defendant's release, the Court does not find it plausible that the decision to seek dismissal turned on counsel's leave schedules. Counsel for the Government reaffirmed this at the February 9, 2026 hearing on the Motion, representing that the Government provided counsel's leave schedules so that the Court would be aware in the event that the trial was moved necessitating substitute trial counsel for the Government to appear. They further represented that line prosecutors in their office do not have authority, on their own, to dismiss an information without prejudice. The Court accepts this reasonable explanation for counsel disclosing their scheduled leave.

The more plausible explanation is Defendant's second: that the Government sought dismissal to gain a tactical advantage. The timing and circumstances point in that

direction. From the pretrial motions and the January 28, 2026 pretrial conference, the Government gained substantial insight into Defendant's trial strategy and a preview of the Court's views on pivotal pretrial disputes, including self-defense and the scope of admissible evidence. The Government also had the opportunity to assess the Court's concerns through its questions and willingness to hear argument. *See Erickson*, 2024 WL 81290, at *6–9 (finding the Government acted in bad faith by waiting to dismiss a case until after a pretrial status conference where the Government gained insight into defense counsel's trial strategy and the Court's intended rulings on pretrial disputes). The Government also gained key evidence from Defendant in discovery, including higher quality, slow motion video of the incident in question than the low quality social media video it had relied on months before.[10]

It was equally apparent that prior to the filing of the Motion, the Government's evidentiary presentation had not yet solidified. On October 7, 2025, after the parties had briefed their motions in limine, the Court (then presided over by Judge Staton) ordered the Government to provide the video exhibits it intended to introduce at trial. *See* Doc. # 47. The Government initially lodged a single video—apparently a screen recording of footage uploaded by an unknown social media user who was recording a second video played on a different device. *See* Doc. # 80. At the January 28, 2026 pretrial conference, the Government relied on a different, higher-quality video that it had obtained from defense counsel. When the Court then directed the Government to clarify which video evidence it intended to present, the Government identified a surveillance video for the first time—one

---

[10] At the February 9, 2026 hearing, the Government asserted that the final pretrial conference did not prompt its decision to seek dismissal. According to the Government, it had already learned Defendant's trial strategy from the defense's pretrial motions, and because the Court had not yet ruled on those motions, it gained no insight from the Court's questions or comments at the conference. Even accepting those assertions—and the Court does not—the conclusion does not follow. Dismissal without prejudice would nonetheless afford the Government substantial additional time to address the issues surfaced in both the pretrial motions and the final pretrial conference and to recalibrate its case accordingly, before recharging Defendant at a time of its choosing. That opportunity itself would confer a significant tactical advantage.

-15-

it had not previously lodged—and stated that it no longer intended to offer the social media recording. Doc. ## 80, 81.

With trial imminent, evidentiary issues unresolved, and Defendant unwilling to plead, the Government faced the prospect of proceeding to trial with an unsettled and potentially constrained case. The Government faced the possibility that it would have to disclose personnel files of several FPS officers, including one who seemingly made misrepresentations, or at least omissions, to his employer and potentially federal agents. Dismissal without prejudice would eliminate these risks for the Government, allowing it time to regroup, refine its evidence, and refile at a more favorable moment. Additional time would no doubt permit the Government to address the authentication and foundation objections raised by Defendant, and perhaps collect even more evidence. This may have strengthened the Government's presentation for use in the future, but it is not a good-faith basis for dismissal under Rule 48(a). *See Poindexter,* 719 F. Supp. at 12.

### C. Permitting the Government to Re-Charge Defendant in These Circumstances Would Permit Prosecutorial Harassment

By seeking dismissal without prejudice, the Government necessarily preserves the option of re-charging Defendant at some future time. The Motion itself offers no explanation of when that might occur. Government counsel's February 5, 2026 email, however, confirms the Government's intent to do so, stating that the Government "believes that it is in the interests of justice for the state matter to proceed *first*, which is why we are seeking a dismissal without prejudice." Doc. # 92-2 (emphasis added).

At the February 9, 2026 hearing, Government counsel stated that the Government had no present intention to re-charge Defendant. In light of that representation, the Court recessed to allow counsel to confer with his supervisor to assess whether the Government would agree to dismissal of the Information with prejudice. After the recess, counsel reported that the Government's position remained unchanged and that it continued to seek dismissal without prejudice. From that position, the Court necessarily infers that the

Government wishes to preserve the option to refile this same charge against Defendant at some point in the future, subject only to the statute of limitations.

That posture is troubling. Charging Defendant with a misdemeanor assault, insisting on his pretrial detention, allowing him to remain in custody for six months, dismissing the charge while accusing him of evading state authorities, and then retaining the option to re-charge him later would objectively constitute prosecutorial harassment.[11] And because this is a misdemeanor offense that does not require a grand jury indictment, Defendant is uniquely vulnerable to recharging and immediate re-detention at the Government's discretion. *Cf. United States v. Balde*, No. 1:25-CR-00294 (JLR), 2025 WL 2476710, at *3 (S.D.N.Y. Aug. 28, 2025) (noting that "dismissal without prejudice is not a toothless sanction, since the Government would need to secure a new indictment within the statute of limitations in order to reprosecute Defendant") (internal citation removed).

This is precisely the kind of harassment Rule 48(a) empowers the Court to prevent.

### D. The Interests of the Public Are Not Served by a Dismissal Without Prejudice

Moreover, dismissal without prejudice would not serve the public interest. As recognized by the Government, this charge arose in the context of a protest against the Government's immigration enforcement actions. *See* Doc. # 1 at 3; Doc. # 34 at 3. The right to protest is a core First Amendment protection. Granting the Government's Motion here risks sending a dangerous signal: that when officials are confronted with protest or criticism, they may respond with aggressive tactics and then deploy criminal charges that

---

[11] To be clear, the Court is not accusing the Government of subjective bad faith or personal harassment of Defendant. Instead, the Court considers the effect on Defendant of a dismissal of charges with future re-prosecution being held in abeyance for an indefinite period of time (within the statute of limitations period) in this circumstance to amount to objective bad faith and prosecutorial harassment. *See, e.g., Poindexter*, 719 F. Supp. at 11–12.

can be imposed, withdrawn, and revived at the Government's discretion. That signal alone is sufficient to chill lawful protest.

The Court draws no conclusion regarding the truth of Defendant's allegations regarding officer motives or the appropriateness of the force used against Defendant. But allowing dismissal without prejudice in the shadow of such allegations risks sending a message to the public that prosecutorial power will be used to reinforce, rather than restrain, heavy-handed crowd control at protests—by allowing criminal charges to function as leverage instead of allegations that will promptly be tested before a jury.

The Court emphasizes that violent protest is not protected by the First Amendment, and when the Government is confident in its case, it may and should bring charges against those who assault federal officers acting within the scope of their duties. But the Court cannot permit a system in which prosecutorial discretion is used to impose punishment without adjudication, particularly when applied in the context of those protesting the Government's activities. Rule 48(a) does not allow the criminal process to be weaponized in that manner.

## IV.   CONCLUSION

Accordingly, for the reasons above, and in the interests of justice, the Court finds that the Information brought against Defendant is hereby DISMISSED WITH PREJUDICE. The case is closed. All pending matters are hereby terminated.

**IT IS SO ORDERED.**

Dated:  2/9/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE